U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed August 27, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANGELA RYAN, | § | CHAPTER 13 |
| | § | |
| | § | CASE NO. 09-45948-13 (DML) |
| DEBTOR. | § | |
| | § | |
| ANTHONY BALE AND SALLY BALE, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADV. NO. 09-04391 (DML) |
| | § | |
| ANGELA RYAN, | § | |
| | § | |
| DEFENDANT. | § | |

**MEMORANDUM OPINION**

The above-styled adversary proceeding was tried to the court on July 7, 12, 13, and 14, 2010. At trial the court heard testimony from Plaintiffs Anthony Bale and Sally Bale (collectively, "Plaintiffs"), Brian O. Gaffin, President of Brian O. Gaffin, Architects, Inc. and

1

Gaffin Construction Group, Inc., offered by Plaintiffs as an expert witness, Dave Surrey, an officer at Affiliated Bank (the "Bank"), and Defendant Angela Ryan ("Debtor"). The parties offered into evidence exhibits identified as necessary below.

The court exercises core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(J). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I. Background

Plaintiffs entered into a contract for the construction of a home (the "House") with Fettig Construction Inc. d/b/a J & G Custom Homes (the "Corporation"). Debtor at all times was the President and sole shareholder of the Corporation and was the only person responsible for the day-to-day business and management decisions of the Corporation.

Plaintiffs' construction contract (the "Contract") (Plaintiffs' Exhibit 7; hereafter an exhibit will be designated by "PX" or "DX" with identifying number), dated November 2, 2004, provided that the Corporation would construct a new residence on a lot owned by Plaintiffs located at 6300 Shadow Dr., Burleson, Texas 76028, based on a specified custom plan, for $356,002.00, including a $35,000 contractor's fee to be paid to the Corporation. *See* PX-7. In order to fund performance of the Contract, Plaintiffs obtained a construction loan from the Bank. *See* PX-10.

Before entering into the Contract, Debtor and Plaintiffs had extensive discussions respecting the design and construction of the House. An initial estimate furnished to Plaintiffs by Debtor pegged the cost of the house at around $500,000.[1] Following further discussions, the

---

[1] In referring in this memorandum opinion to actions by Debtor (as opposed to the Corporation) the court does not intend to imply that Debtor was not acting as and for the Corporation.

design of the House and the contractual obligations of the Corporation were modified to achieve a price more acceptable to Plaintiffs.[2]

Plaintiffs testified that, in order to induce them to enter into the Contract, Debtor represented that the House would be completed at the price in the Contract and represented that she would provide final plans, specifications, and drawings for signature approval by Plaintiffs before beginning the project. Plaintiffs claimed that Debtor represented she had sufficient experience and expertise to manage construction of the House. Plaintiffs alleged that these representations ultimately proved false, as Debtor failed to provide them any final plans, caused the project to be laden with overruns, and knew that she would be unable to adhere to the budget.

Plaintiffs also testified that the work was unsatisfactory. They claimed that Debtor increased a dimension of the secondary garage area foundation from 14 to 16 feet, resulting in increased square footage, misaligned framing, and additional expenses to finish-out the space. Plaintiffs also claimed that Debtor, despite knowing Plaintiffs desired a hip-style roof, installed a gable-style roof without first consulting them, resulting in additional finish-out expenses for the space thereby created.[3] Plaintiffs claimed Debtor failed to supervise the foundation rough-in and plumbing rough-in prior to pouring the concrete for the foundation, resulting in the plumbing having to be moved after the concrete was poured. Plaintiffs further asserted that Debtor failed to supervise the finishing of the concrete floor to ensure it would accept the concrete stain Plaintiffs had requested. Plaintiffs alleged that Debtor, after using up $261,028.31 of the loan, walked off the job when only approximately 50 percent of the construction was complete and

---

[2] The parties reduced the cost of the project by having Mr. Bale perform some of the clean-up and other work around the project. Mr. Bale also found a few sub-contractors on his own to perform some of the work at a lower cost.

[3] There was conflicting testimony by the parties over whether Plaintiffs requested and approved the change from a hip to a gable-style roof and whether, after it was done, they requested that the extra space be finished out.

represented that she would not complete the construction except on the basis of a second estimate of $460,479.83, $104,477.83 more than the price in the Contract.

After Debtor abandoned the project, Plaintiffs filed a state court lawsuit in Johnson County, Texas (the "State Court Suit"), against the Corporation and Debtor for breach of contract, negligence, statutory fraud, and violations of the Texas Deceptive Trade Practices Act (the "DTPA"). Prior to resolution of the State Court Suit, the Corporation filed for relief under chapter 7 of the Bankruptcy Code (the "Code")[4] on September 25, 2009. Plaintiffs objected to the discharge of the Corporation in an adversary proceeding filed November 22, 2009 (the "Corporate Adversary"). The Corporate Adversary was thereafter dismissed on December 29, 2009, pursuant to a notice of dismissal filed by Plaintiffs.[5]

Debtor also filed for relief on September 25, 2009, but under chapter 13 of the Code. Plaintiffs then objected to discharge of the debt they claimed against her in the State Court Suit by filing a complaint in this court on November 22, 2009 (the "Adversary"). The Adversary was brought pursuant to sections 523(a)(2)(A) and 523(a)(6) of the Code, but Plaintiffs later amended their complaint to omit the claim under section 523(a)(6). On January 22, 2010, Debtor filed an answer in the Adversary asserting that Plaintiffs' allegations related to actions or inactions of the Corporation, not Debtor, and that the objection to discharge was therefore unsustainable. On February 2, 2010, Plaintiffs again amended their complaint to allege that the Debtor was liable for fraud and should be denied discharge of their claims due to Plaintiffs' ability to pierce the corporate veil and hold Debtor liable for the alleged actions or inactions of the Corporation relating to the Contract.

---

[4] 11 U.S.C. §§ 101 *et seq*.

[5] A corporation does not receive a discharge under chapter 7 of the Code (11 U.S.C. § 727(a)(1)), so the Corporate Adversary was unnecessary.

4

## II. Discussion

In the Adversary, Plaintiffs seek to pierce the corporate veil under Texas law and except their claims for violations of the DTPA, statutory fraud, and breach of contract from discharge under section 523(a)(2)(A) of the Code. It is their contention that statements Debtor made to them in convincing them to hire the Corporation to build the House amounted to false pretenses, false representations, and/or actual fraud within the meaning of that section. The court concludes that, under controlling precedent, Debtor is entitled to a discharge of Plaintiffs' claims against her because Plaintiffs have neither proven that they are entitled to pierce the corporate veil nor that, even if the Corporation's separateness were disregarded, their claim should be excepted from Debtor's discharge under § 523(a)(2)(A).

### A. Piercing the Corporate Veil

Plaintiffs have asserted that they may pierce the corporate veil of the Corporation in order to bring their claims against Debtor as the president and sole shareholder of the Corporation and hold her personally liable for the actions of the Corporation. They assert Debtor disregarded corporate formalities, commingled corporate assets and affairs with her own, undercapitalized the Corporation, purposefully made the Corporation insolvent, operated the Corporation as a mere facade, and deceived creditors into believing the Corporation was solvent when it was not.[6] They contend that to allow Debtor, President and sole shareholder of the Corporation, and the Corporation to remain separate and distinct would be unjust and fundamentally unfair to Plaintiffs. However, Plaintiffs must not only prove that there is a valid claim for piercing the corporate veil, but also that it belongs to them and not to the Corporation's trustee as property of the Corporation's bankruptcy estate.

---

[6] Plaintiffs did not present evidence in support of all these allegations. For example, nothing in the record supports the assertion that Debtor purposefully caused the Corporation to become insolvent. The court, in this memorandum opinion, addresses only those allegations as to which Plaintiffs presented evidence.

5

### 1. Whether the Veil Piercing Claim is Property of the Estate

The Fifth Circuit Court of Appeals has considered on numerous occasions whether corporate veil piercing claims are property of the estate that belong to the trustee and not claims that a particular creditor may bring. *See,* inter alia*, Matter of Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008); *In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. 1999); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994); *Matter of S.I. Acquisition Inc.*, 817 F.2d 1142 (5th Cir. 1987). The Court of Appeals, as discussed below, has consistently held that most alter ego and similar claims are property of the estate.

In *S.I. Acquisition*, the Court of Appeals held that an alter ego claim rests upon the theory that the corporation and the control person are a single entity. *S.I. Acquisition*, 817 F.2d at 1152. Thus, an action to disregard the corporation's separate existence constitutes a remedy available to all creditors and "does not rest upon a particular creditor." *Id*. The Court further concluded that, under Texas law, as it was then, theoretically there was nothing that prohibited a corporation from bringing its own alter ego action. *Id.* at 1153. Therefore, the right of action belonged to the debtor and so was property of the estate within the meaning of section 541(a)(1) of the Code. *Id*.

In *Educators Group Health* the Court again analyzed the issue, looking to an injury characterization analysis to determine whether a claim is property of the bankruptcy estate. *Educators Group Health*, 25 F.3d at 1284. "If a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id*. And if a cause of action belongs to the bankruptcy estate, then the trustee has

exclusive standing to assert the claim. *Id.* "If on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action." *Id.*

However, more recently, the Court of Appeals in *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010), in dicta, touched upon the question of ownership of an alter ego claim, and the Court commented that claims by creditors for piercing the corporate veil in Texas require proof of actual fraud under section 21.223 of the Texas Business Organizations Code. *Shandong*, 607 F.3d at 1035 (citing TEX BUS. ORGS. CODE ANN. § 21.223(b)). The Court elaborated on the potential effect that section 21.223 has upon the holding in *S.I. Acquisition* and its progeny in the following footnote:

> In this circuit, we determine whether an asserted cause of action arising from a corporate bankruptcy properly belongs to an individual creditor or, because it belongs to the debtor's estate or seeks to recover property of the estate, may only be pursued by the trustee on behalf of all creditors. *In re Schimmelpenninck,* 183 F.3d 347, 355 (5th Cir. 1999). *Schimmelpenninck* held that alter ego "and other" piercing the corporate veil theories must be pursued only on behalf of the debtor. *Id*. (citing *In re S.I. Acquisition*, 817 F.2d 1142, 1153 (5th Cir.1987)). Texas, however, has codified species of veil-piercing that authorizes [sic] a contract creditor to pierce the obligor's corporate veil if the corporate form was used as a sham to perpetrate a fraud and actual fraud was committed *against* that *creditor*. TEX. BUS. ORGS. CODE ANN. § 21.223(b) (2008) (emphasis added). Other decisions have held a fraud claim, if personal to the creditor, not to be property of the debtor's estate even though the debtor might also possess and litigate its own claims against the estate. *See In re Seven Seas, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d 1281, 1285-86 (5th Cir. 1994). Neither *Seven Seas* nor *Educators*, however, disturbed the additional requirement of *S.I. Acquisition*, 817 F.2d at 1150, that an individual claim seeking recovery or control of the debtor's property is subject to the Code's automatic stay . . . . These facts lie between *Schimmelpenninck* and *Seven Seas* and their antecedents, and we leave definitive resolution of the issue for another day.

*Shandong*, 607 F.3d at 1036, n.4 (emphasis contained in original text).

Thus, historically, any right to pierce the corporate veil through alter ego and so reach Debtor would belong to the Corporation's chapter 7 trustee. *Schimmelpenninck,* 183 F.3d at 355; *S.I. Acquisition*, 817 F.2d at 1153. However, in *Shandong*, the Court of Appeals appeared to

7

move in the direction that an alter ego claim can only belong to the trustee so long as the claim seeks to recover or control property that is subject to the Code's automatic stay, because the actual fraud requirement of section 21.223(b) makes species of veil piercing claims personal to creditors. In other words, the Court appeared to conclude that an alter ego claim contemplated by section 21.223 does not belong to the corporate debtor as property of the corporate bankruptcy estate.

*Shandong*, however, by reference to "species of veil piercing" leaves open the argument that some veil piercing claims are still property of the estate. Indeed, it is well recognized that it is within a bankruptcy court's power to substantively consolidate estates of separately existing, related entities, including based upon factors supporting disregard of their separateness. *See In re Babcock and Wilcox Co.*, 250 F.3d 955, 958-59 n.5 (5th Cir. 2001) ("Fundamentally, substantive consolidation occurs when the assets and liabilities of separate and distinct legal entities are combined in a single pool and treated as if they belong to one entity."). Substantive consolidation is a judicial creation, the contours of which are indefinite. *Id.* It usually results in the pooling of assets and claims against the two entities and the satisfying of liabilities from the resultant common fund as well as eliminating inter-company claims and combining into a single constituency the creditors of the two entities. *Id.*

If the courts are able to disregard the separateness of debtors, it is logical to conclude that a court may pierce a corporate veil on the same basis if the property of a non-debtor should be regarded as property of a debtor's estate. It makes sense and is consistent with the goals of Congress in enacting the bankruptcy laws that, where a business structure has been designed to shield from the claims of all creditors a pool of assets that should be answerable for those claims, the bankruptcy court should have the ability to reach those assets rather than creditors pursuing

them *seriatim* in a race to the courthouse.[7] The nature of Plaintiffs' alter ego claim in the case at bar is, at least in part, based on such a theory. Assuming such a cause of action has survived the efforts of the Texas Legislature,[8] however, the claim is one that belongs to the Corporation's trustee, not Plaintiffs.[9] Accordingly, Plaintiffs may only assert their claims against Debtor through satisfying the requirements for piercing the corporate veil fixed by section 21.223 of the Texas Business Organizations Code.

**2. Section 21.223**

Under section 21.223(a)(2) of the Texas Business Organizations Code, a shareholder may not be liable to the corporation or its obligees with respect to any contractual obligation or any matter relating to or arising from the obligation on the basis that the shareholder is or was the alter ego of the corporation or on the basis of actual or constructive fraud, sham to perpetrate fraud, or other similar theory. TEX BUS. ORGS. CODE ANN. § 21.223(a)(2); *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006). Subsection (b) of section 21.223 provides that the limitation on a shareholder's liability under subsection (a) does not protect the shareholder if the obligee demonstrates the shareholder caused the corporation to be used for the purpose of perpetrating,

---

[7] One of the goals served by the Code is avoidance of a race to the courthouse. *See, e.g., Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1248 (11th Cir. 2006) (Pryor, J., dissenting); *United States v. Consumer Health Servs. Of Am.*, 108 F.3d 390, 394 (D.C. Cir. 1997). Another goal of Congress that would be frustrated by limiting the bankruptcy court's ability to bring into the estate property properly belonging to it is that of assuring equal treatment of similar claims. *See, e.g., Velde v. Kirsch*, 543 F.3d 469, 473 (8th Cir. 2008); *Consumer Health Servs. Of Am.*, 108 F.3d at 394.

[8] Courts have disregarded corporate separateness in the bankruptcy context without resort to state law. *See, e.g., Maule Inds. v. Gerstel*, 232 F.2d 294 (5th Cir. 1956); *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940) ("Corporate entity may be disregarded where not to do so will defeat public convenience, justify wrong or protect fraud.").

[9] Plaintiffs argued that, since they were the only creditor, the present case was factually different from prior decisions of the Court of Appeals because there are no other creditors who would benefit from the Corporation's chapter 7 trustee collecting property of the Corporation's bankruptcy estate. The court finds this distinction legally of no consequence as to whether the Corporation's trustee (as opposed to Plaintiffs) possesses the claims. *See In re JNS Aviation, L.L.C.*, 350 B.R. 283, 292 (Bankr. N.D. Tex. 2006).

and did perpetrate, an actual fraud on the obligee primarily for the direct personal benefit of the shareholder. TEX BUS. ORGS. CODE ANN. § 21.223(b); *Willis*, 199 S.W.3d at 272. In other words, section 21.223(b) establishes the basis on which an obligee may pierce the corporate veil.

In *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986) (superseded in part by TEX BUS. ORGS. CODE ANN. § 21.223)), the Texas Supreme Court stated there are six situations[10] in which a court may pierce the corporate veil when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. *See also*, *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994) (citing *Castleberry*, 721 S.W.2d at 271). The Fifth Circuit Court of Appeals subsequently narrowed the *Castleberry* list to "three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate fraud." *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004); *Western Horizontal*, 11 F.3d at 67.

In *Western Horizontal*, the Court of Appeals further addressed the effect of section 21.223 on *Castleberry* stating, "The amendments overruled *Castleberry* to the extent that a failure to observe corporate formalities is no longer a factor in proving alter ego theory in contract claims." *Western Horizontal*, 11 F.3d at 68 (citing *Farr v. Sun World Sav. Ass'n*, 810

---

[10] (1) When the fiction is used as a means of perpetrating a fraud;

(2) Where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) Where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) Where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) Where the corporate fiction is used to circumvent a statute; and

(6) Where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Western Horizontal*, 11 F.3d at 67; *Castleberry*, 721 S.W.2d at 271.

S.W.2d 294, 296 (Tex. App.—El Paso 1991, no writ). "Thus, to pierce the corporate veil using the alter ego theory in a contract claim, the claimant must look to the remaining factors outlined in *Castleberry*."[11] *Id.* Alter ego doctrine is just one theory used to pierce the corporate veil.[12] *Castleberry*, 721 S.W.2d at 272. The theory is to be applied when there is a unity between the corporation and the individual to the extent that the corporation's separateness has ceased and holding only the corporation liable would be unjust. *Penhollow Custom Homes, L.L.C. v. Kim*, 2010 WL 1055107 at *3 (Tex. App.—El Paso Mar. 24, 2010, no pet.); *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.).

The sham to perpetrate fraud doctrine prevents the use of the corporate entity as a cloak for fraud or illegality to work an injustice. *JNS Aviation*, 418 B.R. at 907 (citing *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643-44 (5th Cir. 1991)). "Sham to perpetrate fraud is an equitable doctrine, and Texas courts take a 'flexible, fact-specific approach focusing on equity.'" *Id.* The variety of shams is infinite and the purpose of the doctrine "should not be thwarted by adherence to any particular theory of liability." *Id.* Thus, sham to perpetrate fraud is a less definite approach to piercing the corporate veil that essentially entails a showing that the corporate structure was used unfairly in an attempt to defraud others for the benefit of the principal. *See id.*

---

[11] As proof of alter ego a court may consider: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for personal use; (4) inadequate capitalization; and (5) other failures to keep corporate and personal assets separate. *Mancorp Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Penhollow Custom Homes, L.L.C. v. Kim*, 2010 WL 1055107 at *3 (Tex. App.—El Paso Mar. 24, 2010, no pet.); *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.).

[12] Alter ego was designated by the Texas Supreme Court as the second of the six situations in which piercing the corporate veil is appropriate "where a corporation is organized and operated as a mere tool or business conduit of another." *Western Horizontal*, 11 F.3d at 67; *Castleberry*, 721 S.W.2d at 271.

11

Plaintiffs' allegations generally rely on the first and third broad categories set out by the Court of Appeals in *Western Horizontal*: the Corporation was the alter ego of Debtor and the Corporation was used as a sham to perpetrate fraud. In the case at hand, the court finds Plaintiffs have simply failed to meet their burden by putting on insufficient evidence to support a finding of alter ego or sham to perpetrate a fraud. Additionally, what evidence Plaintiffs offered in support of piercing the corporate veil was largely explained away by Debtor's testimony.

Plaintiffs' evidence included checks and statements properly for the account of the Corporation that Debtor received in her name, including one check from Plaintiffs to Debtor. *See* PX-28; PX-29. Plaintiffs infer from this evidence (which includes a check from Plaintiffs) that Debtor held herself and the Corporation out as one entity. However, it is too great a leap for the court to make such an inference, at least absent any evidence showing that third parties believed that Debtor and the Corporation were acting as one entity.[13] Debtor also countered this evidence by explaining that those vendors invoicing or uttering checks in her name never did so at her instance. In the case of the check from Plaintiffs to Debtor, Debtor was being reimbursed for an expenditure from her own pocket.

Plaintiffs also presented as evidence of unity between Debtor and the Corporation Debtor's personal retention of the ten percent builder's fee. *See* PX-7. However, not only is there no authority that an owner who chooses to take an owner's draw must suffer personal liability, there is case law that indicates quite the opposite. *Penhollow*, 2010 WL 1055107, at *4 (finding income of an owner from owner's draws did not lead to personal liability). Moreover, Debtor testified that the organization of her financial affairs was based upon what her accountant told her to do, and that she filed separate tax forms and kept separate bank accounts for herself

---

[13] Plaintiffs' own exhibits actually serve to offset the inferential evidence that Debtor was representing herself and the Corporation as one entity because most documents from suppliers or sub-contractors were addressed to the Corporation alone. *See* PX-29.

12

and the Corporation based on that advice. *See Morris v. Powell*, 150 S.W.3d 212, 220 (Tex. App.—San Antonio 2004, no pet.) (fact that couple took draws rather than salary because accountant told them they ought to, given their financial circumstances, did not demonstrate such unity between the couple and the corporate entity that separateness of corporation ceased to exist). Based on all the evidence, the court finds that there was not a failure on the part of Debtor to keep her and the Corporation's affairs separate.

Plaintiffs argued that Debtor failed to observe corporate formalities in operating the Corporation and that this evidenced it was her alter ego. Plaintiffs pointed out that the Corporation lacked corporate records, had had no director or shareholder meetings, and had no minutes, including from the annual meeting required by law. However, as discussed above, section 21.223(a)(3) has done away with failure to observe corporate formalities as a factor to support piercing the corporate veil in Texas.[14] Thus, these facts, even if proven, are not relevant, let alone dispositive.

Last, alter ego theory is to be applied when there is such a unity between the entity and its principal that separateness has ceased, and holding only the corporation liable would be unjust. *Penhollow*, 2010 WL 1055107, at *3; *Sparks*, 232 S.W.2d at 868. Plaintiffs presented some evidence that Debtor was commingling her affairs with those of the Corporation, such as checks payable to Debtor and payment by the Corporation of her day care bill. But there was no evidence showing that Debtor placed funds intended for the Corporation into her own bank account instead of the Corporation's bank account.[15] Plaintiffs' strongest evidence is that it

---

[14] TEX BUS. ORGS. CODE ANN. § 21.223(a)(3); *Western Horizontal*, 11 F.3d at 68; *Penhollow*, 2010 WL 1055107, at *3; *Sparks*, 232 S.W.3d at 868.

[15] The court considers the fact that the Corporation and Debtor had separate bank accounts and filed separate tax returns as evidence in itself that Debtor was not commingling her assets with those of the Corporation.

appears Debtor, at one point, used the Corporation to pay for a child care bill of $77. *See* DX-48. However, to hold Debtor personally responsible for the Corporation's liabilities based on a day care bill, which did not affect the Contract in any way, would be unjust to Debtor. Moreover, the court does not believe an employer's acceptance of responsibility for an employee's cost of day care is extraordinary.

The Texas Business Corporation Act has additional requirements for piercing the corporate veil such that invocation of "the various doctrines for disregarding the corporate entity, including alter ego and sham to perpetrate a fraud" must be supported by facts showing "actual fraud." *See Rimade*, 388 F.3d at 143; *JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 907 (N.D. Tex. 2009) (citing *Farr*, 810 S.W.2d at 296). Thus, even if Plaintiffs' evidence were more persuasive, Plaintiffs also would have to prove actual fraud in order to pierce the corporate veil and bring their claims against Debtor as president and sole shareholder of the Corporation. TEX BUS. ORGS. CODE ANN. § 21.223(b); *Shandong*, 607 F.3d at 1035; *Willis*, 199 S.W.3d at 272. Exception from a debtor's discharge pursuant to Code § 523(a)(2)(A) requires that debts be incurred through "false pretenses, a false representation, or actual fraud." The tests for fraud under section 21.223 and the requirements of section 523(a)(2)(A) of the Code are similar. Therefore, the court will conduct an analysis of fraud for purposes of section 21.223 and fraud under section 523(a)(2)(A) jointly below.

## B. Fraud

It is well established that the burden of proof under section 523(a)(2)(A), like the burden of showing fraud under section 21.223, is the standard civil burden: a creditor must show its entitlement to relief by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991). A fact is proven by preponderance of the evidence if the finder of fact, here the

court, finds it more likely than not, based on the evidence, that the fact is true. *See, e.g., In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 909-10 (5th Cir. 1993) (Parker, District Judge, sitting by designation, concurring in part and dissenting in part). "The exceptions [to discharge] are construed strictly against the creditor and liberally in favor of the debtor." *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010) (alterations in original) (quoting *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)). Where two parties present equally credible, but contradictory, evidence, the party bearing the burden of proof has not met his or her burden. *See Smith*, 726 F.2d at 428. In the present case, Plaintiffs have virtually no additional evidence other than their own testimony to support the relief they seek, and the court finds both Plaintiffs and Debtor credible witnesses.[16]

In order for a debt to fall under section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." *Barcelona v. Vizzini (In re Vizzini)*, 348 B.R. 339, 342 (Bankr. E.D. La. 2005), *aff'd*, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting *In re Chavez*, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). The Court of Appeals of the Fifth Circuit has distinguished between the elements of claims seeking denial of discharge for (1) false pretenses and representations and (2) actual fraud. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

**1. Actual Fraud**

The tests to establish actual fraud in Texas and actual fraud under section 523(a)(2)(A) share five elements.[17] To prevail under each test, Plaintiffs must have proven (1) that Debtor

---

[16] For the most part, the testimony of Debtor and Plaintiffs is not directly contradictory. Only with regard to the roof style and accompanying finish-out is the testimony of the two sides facially irreconcilable.

[17] The elements of fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it;

15

made a representation; (2) that Debtor knew the representation was false; (3) that Debtor made the representation with the intent to deceive Plaintiffs; (4) that Plaintiffs relied on the representation; and (5) that such reliance resulted in injury to Plaintiffs.

First, with respect to the alleged representations, Plaintiffs have failed to establish the second and third common elements—that Debtor made any representation she knew to be false and that she made any false representation with the intent to deceive Plaintiffs. As for the representations regarding her qualifications, the evidence suggests that Debtor was truthful. And since she was truthful, she was not being deceptive. Other representations cited by Plaintiffs concern the future state of things. For example, Plaintiffs attack statements allegedly made by Debtor that the work would be performed in a good and workmanlike manner. Plaintiffs allege that, in fact, the construction fell below this standard. Such a statement, however, has no immediate truth or falsity—it is at most a promise respecting what will be done.[18] That is, it is neither true nor false at the time it is made. If such a promise is broken, it may give rise to an action for breach of contract, but not fraud.

Plaintiffs also assert that Debtor knew there would be cost overruns and knew the House could not be completed at the estimated price. But they provide no proof for this assertion. On the other hand, Debtor testified without contradiction that, to her knowledge, she was not competing against any other homebuilder for Plaintiffs' business, and the Contract provided that

---

(6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong*, 607 F.3d at 1032-33 (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). The elements under section 523(a)(2)(A) are: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (quoting *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991)). The elements only differ in that Texas enumerates a requirement that the representation be material, section 523(a)(2)(A) combines elements (3) and (4) of Texas law under element (2), and Texas allows for fraud when the representation was made recklessly and without knowledge of its truth.

[18] There is no suggestion in the record that Debtor set out willfully to misconstruct the House.

the contractor fee would be capped at $35,000.[19] It appears, then, that there was no motivation for Debtor to underbid the project. Moreover, Debtor testified at length that many of the overruns resulted from Plaintiffs' reconsideration of previously agreed to cost-reducing alterations to the plans, instead returning to specifications set forth in the earlier, more expensive plan.

Second, with respect to other alleged representations, Plaintiffs have failed to establish the first common element—that Debtor actually made them. For example, Plaintiffs allege that final plans were to be provided to them for signature before construction began. But there is nothing in the Contract that such final plans would be provided. *See*, PX-7. There was also testimony by Debtor that she spent considerable time reviewing plans with Plaintiffs.[20] Considering the record, there is simply not enough evidence to conclude that Debtor represented to Plaintiffs that they would receive final and complete plans for signature.

Finally there are the alleged promises by Debtor to bear the cost of remedying the problems with the House. Yet again, other than the conflicting testimony, Plaintiffs have provided little to no proof that any of those promises were ever made and, if made, were made with knowledge that they were false or with the intent to deceive.[21] Moreover, a mere promise is

---

[19] "Contractor fee will be paid as follows: 10% to 12% weekly as bills are presented up to $35,000." PX-7. There was also debate as to whether there was a fixed price in the Contract so that the contractor would have to absorb the cost of any overruns. However, Debtor in her testimony explained that, as a custom home contract, it was not fixed, and the Contract language clearly states, "estimated at .…" PX-7.

[20] Though numerous plans were identified at trial, some of which Debtor testified were nearly final other than a few minor changes, none was specifically identified as the plan that was final. *See* DX-17. Debtor also testified that the wrong set of plans went to the Bank anyway. Finally, there is no evidence that Plaintiffs relied to their detriment on the absence of a final plan.

[21] There was a written agreement for the Corporation and some of the contractors to purchase tile not to exceed a set price for the House so long as all invoices received were paid and up to date. PX-48A. However, payments were not up to date and there was conflicting testimony over whether Plaintiffs had withheld payments or Debtor had refused to pick up the checks. Moreover, the evidence does not support a finding that Debtor would not have purchased and installed the tile had she and the Corporation completed the House. The failure to purchase and install the tile constitutes at most a breach of contract, not a fraud.

not sufficient to make a debt non-dischargeable, even if there is no excuse for its subsequent breach. *See Bercier*, 934 F.3d at 692; *In re Stone*, 91 B.R. 589, 592 (D. Utah 1988) ("[A] promise or representation of intention to act is insufficient [to make debt non-dischargeable]."). Thus, a failure to fulfill promises to remedy the problems with the House will not alone suffice.

The record provides only conflicting testimony that most of the alleged promises were even made, and, assuming certain promises were made, Plaintiffs failed to show not only that these promises were false but that, when the promises were made, Debtor knew they were false or made them with the intent to deceive Plaintiffs. At most, it appears Plaintiffs may have proved negligent construction of their home and, potentially, breach of contract. Plaintiffs have not proved fraud as required by section 21.223 of the Texas Business Organizations Code and section 523(a)(2)(A) of the Code.

**2. False Pretenses and Representations**

In order for the court to deny discharge of a debt under Code § 523(a)(2)(A) on the basis that the debt is attributable to the debtor's false pretenses or false representations, the complaining creditor must prove the debtor's representations were "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992) (later cited in *Pentecost*, 44 F.3d at 1293). There was only one type of representation made by Debtor that can be said to concern past or current facts when it was made, which is any representation made concerning her experience and expertise as a homebuilder.

Plaintiffs attacked representations made by Debtor regarding her experience and expertise, but failed to explain how anything that Debtor said about her past experience was false. For example, during cross-examination, Plaintiffs' counsel attempted to get Debtor to

admit to saying that she had been constructing homes for nearly twenty years, to which she clarified that she had been in the homebuilding business for nearly twenty years.[22] It cannot be concluded that anything Debtor said concerning her experience was false. Even if the court found Debtor's statements about her work at Choice Homes was not perfectly accurate, in that part of her time was spent in sales, Plaintiffs would further need to show they relied upon her representation that she spent ten years building for Choice in entering into the Contract. However, Plaintiffs' own testimony indicated they relied more on Debtor's show homes, which a friend recommended they view, in electing to enter into the Contract.

### III.  Conclusion

For the reasons stated above, the court holds Plaintiffs are not legally entitled to bring their claims against Debtor by piercing the corporate veil, and, even if they were entitled to such a remedy, they have not proven their claims to be non-dischargeable pursuant to section 523(a)(2)(A) of the Code. Thus, the relief sought by Plaintiffs must be **DENIED**. Counsel for Debtor is directed to submit a judgment consistent with this memorandum opinion.

### END OF MEMORANDUM OPINION ###

---

[22] Debtor testified and was cross-examined on her experience as a homebuilder. She replied that she worked with Choice Homes for ten years and had worked as a custom home builder for nearly ten years. *See* PX-31. While some of her experience in Choice was in sales, she did work there overseeing home construction as well and she did work as a general contractor for a number of years building custom homes after leaving Choice.